Good morning. I believe Mr. Cooper, is that correct? That's correct, Your Honor. A little bit of a change of mood. Speak into the microphone if you will. A little bit of a change of mood from the prior case. Indeed. May it please the Court, my name is Ben Cooper and I represent VIP Products. I would like, if possible, to reserve three minutes for rebuttal. JDPI's evidentiary case may have made some sense for its failed trademark infringement claim, but it's a bad fit with the Tarnishment Statute, which has a very narrow range of protection of marks, that is, famous marks, and a very specific mechanism of violation. In this case, what is admittedly famous, the Jack Daniel's word mark, was not the subject of a tarnishing association with a similar mark, Bad Spaniels. And what was allegedly tarnished by association with a similar mark, some overall brand image, undefined, wasn't ever proved to be famous. Can I try to get a handle on what your position is on the elements of tarnishment? The statute says we compare, we look for similarity between a famous mark and a junior mark. Your position in this case is that the famous mark is, the only famous mark is Jack Daniel's. Correct. And your position in this case is that the similar junior mark is Bad Spaniels. Yes. Now, in determining whether there's tarnishment, and assume you're right about those things just for purpose of this question, do we then look at the product to which the junior mark identifies? Or do we only, see, it seems to me we must have to look just past the two marks, because otherwise, if you used an identical mark to the famous mark, there would never be tarnishment. Well, you first have to, before you establish that there's a tarnishment, you have to establish that there's an association that creates. No, no, I'm, forget about the association for a moment. I'm trying to figure out when one figures out whether the junior mark is associated with the senior mark in a way so as to give rise to tarnishment. We look past the mark itself, or can we look at the context in which it is used? I think the precedent doesn't establish that you can look at the context. There's very limited case law under the ADR.  But it seems to me we have to be able to look at least a little bit at the context, because otherwise, if you would use the term Jack Daniels on your squeaky dog toy, we would say, well, that can't tarnish. That's exactly the name they chose. So we do have to look at something else, don't we? And in all of those goods where they're looking, cases where they're looking beyond, they're looking at something which is either the plaintiff's mark itself, for example, the Cody case cited by Mikas, where they're actually using the plaintiff's mark referentially, or the Deere case, which was not under the TDRA, but which was comparative advertising. Right, so let me finish my question so you can answer it more precisely. I do think we have to look at something beyond the actual use of the mark here. And my question is, are we limited to the nature of the product on which it's posted? Because it seems to me that if we're limited to the nature of the product, nobody can contend that a squeaky dog toy tarnishes the Jack Daniels mark. Or do we get to look, as your opponents seem to say, at all the junior marks on the squeaky dog toy and figure out whether they tarnish? The case law, and to the extent there's any legislative history, says you look at the kind of product. That is, is it, to use their example, and there's no support for this, but the shoddy products, or you're looking at the sex toy or something. You're not. What do you mean there's no support? Excuse me, what do you mean there's no support? Your Honor, the legislative history and the statute don't refer to shoddy products. I understand. There is case law. There is case law, but not under the TDRA, under very different state statutes, which don't even look remotely like this. Where are they talking about this? Let's assume we're dealing with the TDRA. And here's a hypothetical. So don't waste your time telling me it's not the facts of this case. I understand. The squeaky dog toy contains cocaine. Is there tarnishment under that circumstance? There may be, because you're looking at the nature of the product. Right, that's what I'm asking. And that's what I want you to focus on. Do we look at the nature of the product, or do we look past the nature of the product to the message the product might give someone? You can't look at the nature of the product. You can't look at the message of the product, and I'll explain why. But you do agree that we look beyond the mark itself. You have to. Right. I agree. The statute is a little literally confusing that way, because it says you're supposed to be looking at whether the reputation of the mark has been tarnished. And there's an argument that so you just look at the mark and not what it's attached to. But on the other hand, the other part of the statute talks about use, and there has to be something about the way the mark is used. So it makes sense to me, and it seems to make sense to you, that what the mark is attached to as a product, the product itself, you can look at. You could look at the product itself, but what you can't do is to look at other alleged trademarks on the product and compare them to something else, because then you are expanding the scope of trademark tarnishment protection beyond the narrow category. So the question in your mind is whether or not the association of a squeaky dog toy, I'll call it that, because it was called that in previous iterations in this case, whether the association of a squeaky dog toy with the name Jack Daniels would tarnish that trademark.  And that was one of the district courts, the first time around, alternative approaches to say that association is the same. Right. And then it got dropped the second time. It got dropped. So now we're down to just the marks. Let me focus a slightly different way. If we agree with you on the tarnishment claim and reverse the district court, how would we write that opinion? Do we reverse, for example, on fame as the old number two, or on the likelihood of reputational harm? I will give you the path, which is where I want to go. Before you ever get to what you look at for purposes of tarnishment, you have to first identify what the famous mark is. The plaintiff must identify what the famous mark is, prove it's famous. And in this case, it is what? In this case, it's at most Jack Daniels.  What about the trade risks? But there's no evidence that anyone can recognize that, just simply because you know Jack Daniels, that the general standard, according to McCarthy, is 75%. And 75% of the general population knows what's on the bottle. You could belly up to a bar your entire adult life and order a Jack and Coke and still not know what's on the bottle or be able to identify it. There's no survey establishing the fame of it. And it seems to me that one of the difficulties with your friend's argument, and I want them to respond to it so it may pose it to you too, is that old number seven was not demonstrated to be a famous mark, at least in any part of the record that I see here. And so it's possible that if it were a famous mark, then use of old number two might tarnish it, would it not? It might if there was evidence of it. Right. And that's the part I wanted you to get to. Let's assume for a moment that we have to look at whether there's any evidence of tarnishment as opposed to what it is that we look at. You argue in your brief that the expert testimony of Dr. Simonson, I think it is, doesn't establish tarnishment. Tell us why. Well, for a couple of reasons. First of all, it doesn't establish fame. And also it doesn't establish, before we get to tarnishment, you have to show that similarity creates an association. So what that means is if you – Well, the similarity of – stop. Because this is where I want you to focus. I think the judge concludes, and I think it's a reasonable conclusion, that the similarity between the name Jack Daniels and the name Bad Spaniels creates some association. I think that's wrong, and I think that there's no evidence to support it. And I think the statute says the association, the link between the two, must arise from the similarity of those two marks. There is no evidence. So similarity is not enough and is not by itself enough to create association? If you see Charbucks, you think Starbucks. If you think, see Spam the Muppet Puppet Pig, you think of Spam the pork product. If you see Bad Spaniels, there's no evidence based on the names that you are – What about – and you just wash out its location on a bottle that looks kind of like Jack Daniels and a – get marks, but in terms of how it's presented. Yes. Don't look at the entire label, for example? No, because for creating the association – Forget about anything that's said on the label, just the way the label looks. You could do that only if you first establish that the entire label appearance is famous within the meaning, because the statute says the association arising from the similarity between a mark and a famous mark. So you have to at least establish the association. When they used Bad Spaniels on their control, that established that Bad Spaniels doesn't – someone seeing Bad Spaniels doesn't think Jack Daniels. It's only according to their own theory that when you see the entirety that you even think of Jack Daniels. Well – It's a more stringent argument than you need to make. In terms of the sufficiency of the evidence, Mr. Simonson's evidence was – all he said was that if – he didn't do any studies. He argued simply from other studies about association with defecation, and he completely washed out the fact that this was an obvious parity. And isn't that sufficient to simply say that his opinion wasn't worth very much? We agree, Your Honor. We're trying to – there are – I think there are case fails on a number of different grounds, one of which is they don't meet the elements of the statute. And I think we've also tried to make clear it's also not tarnishing by any real sense. I mean, you have an untested hypothesis that any time you make the slightest, most benign, most polite euphemistic reference to poo or – But you only get the association with defecation not from the product, not from the – Right. Not from the fact that it's a squeaky dog toy, but from the messages on the squeaky dog toy. Correct? Right. It's from – So the question – this goes back to the initial question. We all agree that you're not just limited to the two marks in determining whether or not there's tarnishment. But you are for purposes of association. And there's not even evidence that anyone or even a claim that anyone seeing bad Spaniels thinks Jack Daniels. And that distinguishes this case from every other case. So I want to understand your argument. Your argument is that as a threshold matter, someone must establish an association between the two marks. That's correct. And that similarity is not enough to establish that association? That's correct. Now, if they're the same, if they were precisely the same, you wouldn't need any other evidence of association. Right. And that's why all those cases that involve basically knockoffs or use of the same – you know, if you put out Google pornography, Google gets you to Google. The question is, does bad Spaniels get you to Jack Daniels? And the answer is, Dr. Simonson never claims that. He assumes an association and just focuses on whether it's tarnished. He doesn't say that bad Spaniels creates an association with Jack Daniels, but he says the entirety of the product creates the association. No. He says the entirety of the association is tarnished. The entirety is tarnished. He doesn't get you to the association aspect of it. Well, but it's clear to me when I look at the dog toy and maybe I drink too much bourbon or Tennessee whiskey, as it's described in this case. What kind do you drink? I don't want to be accused of tarnishing the reputation of the – My colleague comes from a Kentucky family. But I guess it is a very reasonable conclusion that when one looks at the whole squeaky dog toy together, it is meant to create an association with the Jack Daniels product, correct? That's correct. Why isn't that enough? Because there is no evidence that overall appearance is famous. That is, you have to establish fame as a very high standard household name. I submit that if Trek is not famous for bicycles and Coach is not famous for leather handbags, that even if Jack Daniels as a name is famous, what's on the label, you have to prove that. Is the trade dress famous? The question is, and this is the problem throughout the case, what is the trade dress? Well, let's assume it's the shape of the bottle for the model. Well, the shape of the bottle was created, that our toy invokes, was adopted in 2011, okay, for the first time. They had a different square bottle. That's the problem in footnote one of the district court's ruling. It grotes everything together. The court says Jack Daniels trademarks and trade dress, which is what later finds to be famous, includes several registered trademarks, including for Jack Daniels itself, for old number seven, for ornamental label design, and others. And then the court says, well, I don't have to find whether old number seven is itself famous. So it's got this vague thing that's being called for. Does the trade dress include the filigree label and so on? We don't know. It was plaintiff's obligation to identify what their mark was famous and then prove it. So what we've got is a case that was really designed for infringement, and now we're trying to use it for the remaining claim, which is tarnishment, which has this fame element, which narrows the class of mark. So that kind of trade dress may have made sense for an infringement claim, but we don't know what it is or what the evidence is to establish that that's famous outside of a niche market of whiskey drinkers. You're about out of time, but I want to ask one question. If we were to conclude that a district court applied the wrong standard, we would presumably remand for him to apply the right standard, right? I don't think the court at this point can or should. I think it's a failure of evidence. We agreed to proceed. I'm asking you, which one is it? Is it that he applied the wrong standard, or is it that there's not substantial evidence on the right standards? It's both, but there's no way to fix it under the correct standard, because there simply is no evidence of fame of anything other than the name Jack Daniels. I take it your position is they failed to present sufficient evidence of association. That's correct. Fame of association and of tarnishment, all three. All three. Yes. All three. Therefore, even if the court were to apply the correct standard on this record, we would end up with the same result you urge. That's correct. It fails all over the board, because I think it's fair to say that folks litigating it, everyone was focused on infringement and did not appreciate the demands of proving a tarnishment claim. Okay. You've gone over your time. We'll give you a little time to respond. I appreciate that, Your Honor. But let's now hear from, I guess, Mr. Nicholson on behalf of Jack Daniels. And as I understand it, you have ten minutes. Is that correct? Yes, Your Honor. That's correct. Very well. Please proceed. Good morning, Your Honor, and may it please the Court. Matt Nicholson for Jack Daniels Properties, Incorporated. I'd like to start with the statutory argument, Your Honor. VIP previously advanced the theory that marks could only be facially tarnishing, that you had to compare just the mark on its face, i.e., bad spaniels, to Jack Daniels. Oh, the use factor doesn't come into it. Correct. That was their position. I think Your Honors understand that that obviously is the wrong interpretation of the statute. Use looks to how the mark is used. Well, it's the wrong interpretation, I think, when one looks at tarnishment. But I take it that what Mr. Cooper is saying is that you must establish an association between the junior mark and the famous mark that goes past similarity, particularly in a case where they're not identical, and you must establish that the junior mark would be associated with the senior mark. That's correct, Your Honor. And the first part of the definition says association arising from similarity. Does it? Yes, Your Honor. It says association arising from similarity. But is the similarity enough? Not that it is. Is the similarity enough to establish it? Well, Your Honor, yes. That's how the statute reads. But I would point out that similarity. Oh, it doesn't read that way. Excuse me. It doesn't say that similarity is association. It says there has to be association arising from similarity. Correct. And the association arising from similarity here was conceded below. So your view is that similarity is enough to show association without more? Well, Your Honor, as they argued. No, I don't know what they argued. I just want to know what your view is. No, my view is that similarity, that element takes into account the context. So your view is that once you've established similarity, you've established association? Yes, but that takes into account all the circumstances, including, Your Honor, their whole position in this entire case has been that their use of bad speech. Yeah, but, again, I'm not worried about their position. I'm just trying to – when we go back to decide this case, I want to know what your position is, not theirs. Right, right, right, Your Honor. And your position is that if one establishes similarity at any level, one has established association. My position is that similarity turns on the commercial context in which it's used. And that brings in all the elements of – Yeah, well, I want to turn to that next. Sure. But however one establishes similarity, you think if you've established similarity, you've established association, you don't need any separate proof of association? Right, and the similarity here is established by – Okay, you don't need – now I want to turn to you. Your Honor, to be clear, the association is established by the fact that they literally put a Jack Daniels bottle on the table and designed their product based on it. They copied every aspect of the trademarks. But that doesn't prove anything about what people think when they look at it, at the mark itself. Yeah, and they argue that the whole point of the dog toy, Your Honor, is to evoke and bring to mind Jack's Daniels. That is the entire point of their product. That was undisputed. So here's another question. Is your position that the comparator is not between the marks but between something else, what the mark is attached to? Yes, Your Honor, the similarity inquiry looks to the whole context of how it's used. It's true with regard to tarnishment, but why is it true with regard to similarity and association under the way the statute is written? Because I think that all of trademark law works in this totality of the circumstances way. You look at how it's used in commerce because that's how consumers are likely to experience it. They would look at the entire bottle. The bottle has marks. It has trade dress that match virtually the Jack Daniels trademarks and trade dress. Well, but what's your famous mark? Well, Your Honor – One thing the statute is clear about is we have to establish what the famous mark is. Tell me what your famous mark is. The Jack Daniels mark, both the word mark and the logo mark, I think that's what the Court was referring to when it said the Jack Daniels marks, and also the trade dress. Well, but what evidence is there that anything beyond the name Jack Daniels is famous? We put on ample evidence. I've looked at all of it. It doesn't seem to meet the requirements of our case law of establishing which is that the average Joe off the street would recognize it. And I understand it's undisputed that Jack Daniels, that mark, is famous. But do you get to bootstrap that to say that everything else is famous? Well, first of all, you don't have to reach that because the use of Jack Daniels on the dog toy is sufficient. But we did prove – Well, they don't use Jack Daniels on the dog toy. They use bat spaniels. Correct. It's a similar mark to Jack Daniels, Your Honor. That suffices to support the judgment. But on the issue of trade dress, we put on ample evidence that all of the marketing, virtually all of it by Jack Daniels features the trade dress, the entire box. Well, that's not the issue of unfamousness. The issue of unfamousness is, and it's a mushy issue, you must establish that the average consumer would recognize this. Correct. And I just don't see any proof beyond the name Jack Daniels. Now, to be fair, you know, the first trial was focused on infringement. You all made the decision – well, we made the decision to send you back so you could develop an additional record. Nobody decided they wanted to. So we're stuck with the record from the first trial. But I don't see how that record establishes the famousness of anything but the name Jack Daniels. Well, a couple of things, Your Honor. One, one of the factors for fame is advertising. Virtually all the advertising we put in examples in the record features the trade dress, the bottle of Jack Daniels. The bottle has been featured in countless television shows, movies, celebrity photos. We put on all that evidence. But you market many products that have a different label. Correct, Your Honor. And you marketed products with a different shape before 2011 of a different shape of the bottle, right? Correct. And we didn't try to prove that the trade dress of every single product in the line is famous. But we did put on evidence, and the district court found, and it certainly wasn't clear error to find that the trade dress of the Jack Daniels bottle was famous. And they themselves conceded in the prior appeal to this court that the Jack Daniels bottle was famous and iconic and that their whole product was a parody of it. The whole point of it was to draw an association through similarity to our product and bring it to mind. And once, Your Honor, you get past that issue and you look then at the tarnishment, the reputational harm, you know, the argument being advanced here today is you look only at the product type and not the content on the product. Your Honor, we think that, first of all, the concession that you can look at the product type gives the game away. The product type is a squeaky dog toy. If I just compare, if I just say, I'm now associating Jack Daniels with a squeaky dog toy, that doesn't tarnish anything. You have to include the messages on the dog toy in order to get tarnishment, don't you? Correct. And it shows you look beyond just the face of the marks. Right. No, we all agree you look beyond the face of the mark. I'm asking how far beyond the face of the mark we look. And what you're suggesting is we not only look at the type of product, a bag of cocaine, for example, or a porn movie, we have to look at the messages that the other product gives. And I can't find any case that tells me I do that. Well, I'm happy to point you to a case, Your Honor. Point it right now. The district court cited the original Appalachian case, which involved the Cabbage Patch dolls. There, the defendant had created a series of cards and stickers that depicted the Cabbage Patch dolls, which it renamed Garbage Pail Kids, in very unsavory ways. There, the product stickers isn't necessarily tarnishing, but the content is. And if you took VIPs. Is that a post-TDRA case? No, Your Honor, it's a pre-TDRA case, but I'm happy to point you to a post-TDRA case. Yeah, that would be helpful. Yeah, there's a case called Rolls-Royce versus I believe it's Smith. It involved a rapper that went by the stage name Rolls-Royce Rizzy. Rap, in general, isn't tarnishing, but the content of his particular rap was. It involved sexual content. And if you were to hold otherwise, it would mean VIP could slap onto the sides of its bottle pornographic images, images of actual feces, references to drugs, any other content. And, Your Honor, I think that would really gut the statute here. It would allow you to get around the prohibitions by just saying, oh, well, the product type, that isn't tarnishing on itself. But the content, Your Honor, you have to blind your eyes to that. That's not how trademark law works. It is a totality of the circumstances inquiry. You can consider all that. And you shouldn't endorse such an absurd interpretation that no court, to my mind, has ever endorsed, Your Honor. And turning to the issue of reputational harm, Your Honor, the district court sat through a four-day bench trial. It heard testimony from both sides, experts on the issue of reputational harm. It weighed that evidence. Who or what's reputation has to be injured? The reputation of the famous mark or trade dress here, Jack Daniels. The marks have reputations? Yes, absolutely, Your Honor. Brands like Jack Daniels invest immensely. That's a brand. That's not a mark. Correct. They invest a lot of resources in the mark, which they advertise. And they associate it with certain brand values here, values like independence, integrity, authenticity. And what VIP did was associate the brand and said it was something that was totally incompatible. They wrote on the bottle, 43% poo by volume, 100% smelly. They're evoking the image of a bottle full of liquid feces, Your Honor. That is an association that is tarnishing and that no brand would want associated with a product for human consumption. The district court was well within its discretion to find that that tarnishing association was one that was likely to harm the reputation of Jack Daniels' mark. That certainly wasn't clear error, which is the standard of review for this court. The court should defer to that factual finding. And VIP hasn't done anything coming close to demonstrating error in that, much less clear error. Very well. You're up right against your time. Thank you, Your Honor. Thank you very much. Mr. Hazel has five minutes from the DOJ.  Good morning, Your Honors. May it please the court, Stephen Hazel for the United States. We intervened in this case only to defend the facial... Can you speak up a little bit, please? Of course, Your Honor. We intervened in this case only to defend the facial constitutionality... So let me make your job easier. The district court said you waived the argument, VIP. There's now a case pending for the Supreme Court, which seems to raise the question of whether or not a defense must be raised in a pleading in order to be raised at the summary judgment stage. Shouldn't we just wait to see what the court says? I don't think we should address constitutionality at this point of the case. If, in fact, there was waiver, do you? I agree with that, Your Honor. And even if there wasn't waiver, I guess, why shouldn't we let the district court address constitutionality in the first instance? Your Honor, I don't disagree with any of that. So if my colleagues agree with me, you've accomplished your purpose? That's right, Your Honor. I'll note that VIP's counsel didn't even raise this constitutional question during... See, I'm reluctant to take up an argument on constitutionality today when the other side has been told by the district court that it was waived, and the bulk of the argument in the case is about waiver. So we would be taking up an issue the district court never addressed in which the parties, while touching on in their briefs, really haven't focused on to the kind of depth I think it deserves, as your brief demonstrates. Your Honor, I'm in agreement, both with respect to the waiver issue and obviously the many other issues in this case. I have another concern about this, too, which is that if we were to look at a First Amendment issue, one would think that we would look at an as-applied question before we looked at a facial challenge, and that the as-applied issue in this case is probably fairly strong or stronger. So that would be another reason not to be going forward at this point. I think that's right, Your Honor, and it's true that VIP, for whatever reason, did not bring an as-applied constitutional challenge. So I'm happy to answer any questions the court may have about the substance. Other questions by my colleague? Hearing none, thank you very much. Thank you. So we'll give you a couple of minutes. We don't want this case to go to the dogs entirely, and we'll let you finish it up. The dog puns are irresistible when you litigate this case. The court, I think, has identified there are three levels. You have first, similarity, you have second, whether the similarity gives rise to an association, and the third is whether or not the association is tarnishing. As far as the similarity goes— And there's famousness. Yes, famousness is part of that. In evaluating the similarity, you do that between the famous mark and the similarity mark. Let me just ask you this since you don't have very much time. Yes. If you were us, what would you want us to do? I think the simplest thing— I think it's rule for us under the statutory grounds without reading the constitutional grounds, we're not here to— Well, the constitutional grounds, let's assume they're— I think the easiest thing is to put this back on Jack Daniels and to say you didn't identify and then prove the fame of a mark for which there was a similar mark that created an association. Because once they—if you look at the Jack Daniels mark and then you look at the control they used, that concedes that bad Spaniels, page 48 of our brief, bad Spaniels does not get you back to Jack Daniels. It's only when you look at the totality that sells the joke.  If you saw bad Spaniels alone, you would never think, oh, that's about Jack Daniels. You would have to see the entirety. That required them, that theory, that the tarnishment is the entirety of the products, requires them to prove that their entire label design— No, I don't think it does. Because this is why I think this is a matter of nuance and I'm having trouble with it. I think you conceded or at least suggested before that if the bad Spaniels bottle actually contained cocaine, then the association between that product labeled as bad Spaniels and the Jack Daniels mark, that might be sufficient to establish tarnishment, wouldn't it? It might establish tarnishment, but it wouldn't establish the association arising out of the similar mark. Well, see, that's my problem. So you're saying once you don't have an identical junior mark that you can use it to sell anything, porn movies, narcotics? I'm sorry. In your hypothetical, if it's an identical mark? No, I'm saying we all know this one's not identical. So now you've got a mark that is similar to the Jack Daniels mark. You don't dispute that. Right. And that mark is put on a bag of cocaine. And are you saying we have to be able to look at how the mark is used, don't we? Not for purposes of the association because the words of the statute. Isn't the Jack Daniels? I'm sorry, Your Honor. I have a question. Yes. The Jack Daniels mark, and you should go back to the other question. The Jack Daniels mark is not just the name Jack Daniels, right? It's the way it's written. And it's in a curve and it has certain font and so on. Isn't that what we're looking at? Your Honor, that's the problem. There's the name Jack Daniels as you would hear it. There's the arch design. And then there's the greater totality and the district court, one lumps it all together. So we're trying to establish, well, what's famous here? Jack Daniels as you hear it in song or the arch design? And we don't know. But to get into what is tarnished, you have to create an association. And the association, there's no association created by bad spenders. There's, frankly, no proof of the fame of Jack Daniels in an arch. Anything other than the word mark, the name Jack Daniels. What you're saying to us is the district court applied the wrong standard in determining famousness. It applied the wrong standard, but there was no evidence in any event. That is, even if the court had applied the correct standard, or thought it was applying the correct standard, there's no evidence of fame of anything else other than Jack, Jack Daniels, J.D., to support the application of the correct standard in a way that would yield a verdict for J.D.P.I. Jack Daniels is a registered mark, is it not? Well. What's registered? What's registered? The word, the name, there are a lot of different kinds of registrations. Jack Daniels, I believe, is registered. I believe there's an arched form registration, what we used to call type marks for just the bare name, and then the form, and then there's trade dress. There's the entire label design. I think they've got one for the bottle shape. There's a lot of different registrations, but they're all different. Thank you for leaving us this easy, interesting case. The case to this target is submitted, and the court stands in recess for the day. Thank you. Actually, we're adjourned for the day. Thank you.
judges: BERZON, SMITH, HURWITZ